Filed 6/17/13  P. v. Buchanan CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B245156 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA073573) |
| v. | |
| TERRY BUCHANAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Dismissed.

Jerome J. Haig, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Terry Buchanan, appeals from the judgment entered following revocation of probation previously granted after his pleas of no contest to presenting a forged prescription (Bus. & Prof. Code, § 4324, subd. (a)), and second degree commercial burglary (Pen. Code, § 459),[1] and his admissions that he previously suffered a conviction for a serious or violent felony, first degree burglary (§ 459), within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served nine separate prison terms for various felony convictions (§ 667.5, subd. (b)). The trial court sentenced Buchanan to 12 years in prison. Although Buchanan filed a timely notice of appeal, he failed to obtain from the trial court a certificate of probable cause. Accordingly, the appeal must be dismissed.

## FACTUAL AND PROCEDURAL HISTORY

1. *Facts*.[2]

On February 10, 2010, lead pharmacy technician Nicole Vance was working at the prescription counter at the CVS Pharmacy at 8601 South Sepulveda Boulevard in Los Angeles. Buchanan and a woman, Genetta Kilpatrick, were in line to drop off prescriptions. Vance had seen Buchanan and Kilpatrick approximately three weeks earlier, when they also dropped off and picked up prescriptions. Vance remembered Buchanan and Kilpatrick because, although they had acted as though they were not together, they had prescriptions for the same medicine from the same doctor. At that time, Vance had found Buchanan's and Kilpatrick's behavior suspicious and she had so informed one of the pharmacists.

On February 10, 2010, Buchanan and Kilpatrick were again acting as though they were not together, but were dropping off prescriptions from the same doctor for the same medication. Buchanan approached Vance while Kilpatrick was being assisted by another pharmacy clerk. When Vance looked at one of the prescriptions Buchanan had given her, she realized it would require a "TAR," or a "medical justification from [a] medical

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    The facts have been taken from the transcript of the preliminary hearing.

2

doctor." After Vance informed Buchanan of this and told him the pharmacy would "need to get a diagnosis from the doctor," Vance gave the prescription to the lead pharmacist. Both Buchanan and Kilpatrick decided to sit in the waiting area while their prescriptions were being filled.

Shauna Samuel was the pharmacy manager at the CVS Pharmacy on February 10, 2010. When Vance presented her with two prescriptions, Samuel saw "[m]any things [which indicated the prescriptions were] fraudulent . . . ." The first thing Samuel noticed was that the prescriptions indicated the doctor who wrote them practiced " 'Medical genetics.' " According to Samuel, "[t]here is no such field." In addition, the DEA number was "obviously not legitimate." The length and letters did not "correspond to . . . a proper DEA number." When Samuel tried to contact the physician shown on the prescriptions, the phone "kept hanging up, or it was a fax machine. There was not a proper connection." When Samuel then looked up the doctor on the CVS central file, it was "clearly marked." Other pharmacists had received fraudulent prescriptions from this doctor. Moreover, the medication for which the prescriptions had been written was "commonly represented fraudulently." Both prescriptions were for an "anti-psychotic medication in the same type of cluster" pharmacists had been seeing on fraudulent prescriptions and each prescription was "valued at . . . over a thousand dollars."[3] After Samuel had reviewed the prescriptions and been unsuccessful in her attempts at reaching the prescribing physician, she had called the police. Officers arrived at the pharmacy approximately 15 minutes later.

Los Angeles Police Department Officer William Perez and his partner, Officer Hershey, responded to Samuel's call. When the officers arrived at the pharmacy, Perez spoke with Samuel, who showed him the prescriptions, then "pointed out" Buchanan and Kilpatrick as the individuals who had requested they be filled.

---

[3] The anti-psychotic medication on the prescription Buchanan had submitted was Abilify.

3

While Perez spoke with Kilpatrick, Officer Hershey spoke to Buchanan. When Kilpatrick spoke with Perez, she paused for a moment, then told him she knew the prescriptions were "fake" and she had not gotten them from a doctor. They had been given to her by a woman she had met at a McDonald's restaurant off of Century Boulevard.

Buchanan initially told Officer Hershey that a doctor in North Hollywood had prescribed the medications. He then recanted and told Hershey he had obtained the prescriptions from a woman he had met at a McDonald's restaurant. He and Kilpatrick would take the prescriptions to the pharmacy, get them filled and take the medications back to the woman at the McDonald's. In exchange for each prescription filled, the woman gave to Buchanan and Kilpatrick $75.

2. *Procedural history.*

A preliminary hearing was held in this matter on March 29, 2010. After the prosecutor presented evidence, which included the statements Buchanan had made to the police officer at the pharmacy, counsel for Buchanan moved to have Buchanan's statements stricken from the record because they had been given in violation of *Miranda.*[4] Counsel then moved that the charges against Buchanan be dismissed as the prosecutor had failed to prove the prescriptions Buchanan had presented to the pharmacy clerk had been forged documents.

With regard to the *Miranda* issue, the trial court indicated the contact at the pharmacy between the officer and Buchanan had not amounted to "custodial interrogation." The trial court determined from the evidence presented that it had been a "brief," "minimal intrusion" by an officer who approached Buchanan, not in a confrontational manner, but "from a mode of inquiry." As to the question of sufficiency of the evidence, the trial court stated: "The proof that [the prescriptions were] forged is, [initially], the observations of the pharmacist who indicated . . . there were unusual aspects to each of [them]. [¶] . . . [¶] And then you have the admission of the

---

[4]     *Miranda v. Arizona* (1966) 384 U.S. 436.

defendant[], that [he] did not receive [the] prescriptions from the physician" but from a woman at a McDonald's restaurant. The trial court indicated it was not "going to take the leap" and infer there was a doctor who was "writing prescriptions for people [who] were not . . . patients at a fast food restaurant." Accordingly, the trial court denied Buchanan's counsel's motion to dismiss the case.

On April 12, 2010, an information was filed alleging Buchanan committed the crime of presenting a forged prescription in violation of Business and Professions Code section 4324, subdivision (a), a felony (count 1), and committed second degree commercial burglary in violation of section 459, a felony (count 2). It was further alleged Buchanan had suffered a prior serious or violent felony conviction for first degree burglary (§ 459) within the provisions of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served nine separate prison terms for felony convictions (§ 667.5, subd. (b)). At arraignment, held the same day, Buchanan pled not guilty to counts 1 and 2 and denied the remaining allegations.

On April 13, 2010, Buchanan's counsel filed a motion to set aside the information pursuant to section 995. Counsel argued the evidence at the preliminary hearing failed to establish reasonable or probable cause Buchanan had committed the alleged offenses of presenting a forged prescription and commercial burglary. Counsel asserted, although Buchanan might be guilty of some other crime, "there was no evidence introduced at the preliminary hearing . . . the prescriptions [he] presented were forged. . . . [S]ince the felony of forgery was not proven, the crime of burglary was not proven as it required the entry [to the pharmacy] to be with the intent to commit a felony therein." The trial court, however, determined the transcript of the preliminary hearing established probable cause the crimes has been committed and, accordingly, denied the motion.

At proceedings held on August 17, 2010, the trial court indicated the People had offered Buchanan a sentence of 32 months in jail. The court then addressed Buchanan and stated: "If the allegations are true[,] . . . that 32 months is by far the best you're gonna do. Because if I [sentence] you [to] the 12 years' suspended, you're gonna have to stay out of trouble for three years. And you have not been able to do that up to now.

5

You and I both know that you have not been able to do that . . . [a]nd if you desert your probation [or pick up any new offenses], I'm sending . . . you [to] prison for 12 years." The court continued, "[The] People are making you what I think is a reasonable offer of 32 months. If I undercut them [and grant you three years probation], it's going to be with the understanding . . . I'm giving you one chance." "And once I determine there's a violation, there will be no discussions." "There is nothing you'll be able to say to me if you are in violation of probation, and willful violation, to budge me off of this." "So what do you want to do?" Buchanan indicated he would "take the probation."

The trial court explained Buchanan was "going to plead open to the court. [He was] going to plead to both charges. In [the court's] estimation, based on [its] understanding of the facts, they would merge, so the maximum exposure would not change on the two charges. However, it [would] affect [Buchanan's] fines and fees." The court continued, "[I]n light of the fact . . . he has so many state prison priors, [the court has] so much time to hang over his head, that for the facts of this case, even with his record, . . . 12 years is an appropriate sentence for the conduct alleged." Under these circumstances, the trial court determined it would "strike the Strike allegation," "suspend the high term of three years, plus nine state prison priors" and grant Buchanan three years probation. The court then stated, "And we've had discussions on the record and off the record making it very clear to Mr. Buchanan . . . this is his one and only chance at probation."

After Buchanan waived his right to a jury trial, his right to confront and cross-examine the witnesses against him, his right to present evidence on his own behalf, which included the use of the subpoena power of the court at no expense to him, his right to testify on his own behalf and his right against self-incrimination, or his right to remain silent, the trial court indicated Buchanan would be pleading open to the court by admitting all the counts and allegations. The court would then impose the high term of three years for count 1 plus nine years for the prior prison terms, suspend execution of sentence and place Buchanan on probation "for a period of three years on various terms and conditions." Buchanan then pled no contest to the charges alleged in counts 1 and 2,

6

"forged prescription" in violation of Business and Professions Code section 4324, subdivision (a) and second degree burglary in violation of section 459. With regard to counts 1 and 2, Buchanan admitted he previously had been convicted of first degree burglary (§ 459) for purposes of section 667, subdivisions (b) to (i) and 1170.12, subdivisions (a) to (d), the Three Strikes law. With regard to the allegations he had suffered felony convictions for which he served nine prison terms within the meaning of section 667.5, subdivision (b), Buchanan admitted "each and every one of [the] allegations." The court found Buchanan had "expressly, knowingly, understandingly, and intelligently waived his constitutional rights[,]" the plea had been "freely and voluntarily made with an understanding of the nature and consequences thereof, and . . . [there was] a factual basis for the plea." The trial court then struck "the Strike . . . for . . . reasons stated previously."

With regard to count 1, the trial court sentenced Buchanan to the upper term of three years, "based on [his] numerous prior felony convictions," then "an additional term of nine years for [the] 667.5[, subdivision] (b) allegation[s]." In total, the trial court sentenced Buchanan to 12 years in state prison, then suspended execution of the sentence and granted Buchanan three years probation.

The court ordered Buchanan to pay a $200 restitution fine (§ 1202.4, subd. (b)), a stayed $200 parole revocation restitution fine (§ 1202.45), a $60 court security assessment (§ 1465.8, subd. (a)(1)), a $60 criminal conviction assessment (Gov. Code, § 70373), and a $10 crime prevention fee (§ 1202.5).

At a hearing held on February 3, 2011, it was determined Buchanan had violated the terms of his probation. However, both Buchanan's counsel and the district attorney urged the court to give Buchanan one more "opportunity to have [his] underlying issues addressed by going into an alcohol treatment program rather than . . . just sending [him] to prison for 12 years." Because there were apparently extenuating circumstances which had led to Buchanan's violation, the trial court decided to honor the district attorney's and defense counsel's request and indicated, if Buchanan admitted the violation, the court

7

would order him to do 120 days at "ACTON," followed by eight months in another residential treatment facility.

After Buchanan indicated he understood he had a right to a formal hearing to determine whether he was in violation of any of the terms or conditions of his probation, he waived the right and admitted he was in violation as he had "failed to obey all laws." The trial court then "revoked and reinstated [Buchanan's probation] on all the original terms and conditions with the following modifications: [He was] to be released only to ACTON to do a 120-day program. [He was] to be held in county [jail] until a bed [became] available in ACTON" and he was "to complete 120 days in ACTON followed by eight months in another residential [alcohol] treatment program [.]" Before ending the proceedings, the trial court gave Buchanan credit for 31 days served in custody.

When Buchanan failed to appear at proceedings held on March 16, 2012, the trial court revoked his probation and issued a bench warrant for his arrest with no bail.

At proceedings held on May 4, 2012, the trial court indicated Buchanan had "picked up a new case in Torrance, a [robbery in violation of section] 211." In the meantime, Buchanan had been sent back to the court in Los Angeles because he had indicated he wished to make a motion to withdraw the plea he had entered on August 17, 2010. The trial court, however, after reviewing Buchanan's file, determined the 180-day time period provided for by section 1018 for a motion to withdraw a plea had lapsed and the motion was untimely. The trial court indicated Buchanan's only recourse was to file a petition for writ of habeas corpus, denied his motion and transferred the matter back to the court in Torrance.

On October 17, 2012, Buchanan was again in the Los Angeles Superior Court for a hearing regarding an alleged violation of probation. It was agreed to by both defense counsel and the prosecutor that the trial court could consider the testimony given at the April 2, 2012 preliminary hearing in the new case which had been brought against Buchanan. In addition, defense counsel presented the testimony of Deshaun Sims.

Sims testified he had known Buchanan for a "couple [of] years." The two men had met in a "recovery program." On March 16, 2012, Sims telephoned Buchanan and

8

asked him if he wanted to accompany him to the Auto Zone store. Buchanan agreed to go and, after they had been to the Auto Zone, Sims realized they were "right across the street" from the Burlington Coat Factory. Buchanan asked Sims to drive him there, and Sims obliged. The store was not yet open, so the two men waited in the car until the doors to the store opened. Sims, who was on the phone, then waited for Buchanan, who got out of the car and went into the store.

At some point that morning, Sims noticed Buchanan was acting "weird." Buchanan was "fidgety [and] not really coherent." Sims had "never seen [Buchanan] like that," so it had not dawned on Sims Buchanan was "under the influence or . . . wasn't himself . . . until [he] really" began to pay attention. After Buchanan had come out of the Burlington Coat Factory, he "wasn't the same guy" Sims had previously known. He was "real[ly] impatient" and did not seem to understand what Sims was saying to him. Sims did not know whether Buchanan was under the influence of "narcotics or medication or what." He just knew Buchanan "wasn't himself."

As Buchanan walked out of the Burlington Coat Factory toward Sims's car, he was followed by store security officers. When Sims heard one of the security officers tell Buchanan to " 'give the stuff back,' " Sims asked Buchanan, " 'What did you do?' " Although Buchanan responded, his response "wasn't . . . clear." When Sims was asked if he saw Buchanan take a watch out of his pocket and throw it at a store security officer, he replied, "No, that didn't happen."

Buchanan testified he had taken on the day of his arrest "Xanax to numb [his] tooth, Codeine 4, and Respitol." In addition, approximately an hour before he had taken the medications, he had had some brandy and, approximately 24 hours before he had drunk the brandy, Buchanan had used cocaine. Buchanan recalled going into the Burlington Coat Factory, picking up a watch and "just walk[ing] out the door with it." Although he had not paid for it, Buchanan had not placed the watch in his pocket. He had simply held it. When the security guards asked him to "please come back to the store[,]" Buchanan kept walking to the car. However, when his friend, Deshaun, told him to " 'take [the] stuff back[,]' " Buchanan got out of the car, walked toward the security

guards and handed the watch to one of them. Although he had been told he had done so, Buchanan did not remember threatening the store security guard. Buchanan indicated, during the time he has been on probation in this case, he has struggled with his sobriety.

On cross examination, Buchanan indicated, since having been placed on probation in August 2010, he had probably used cocaine three or four times. He had also used marijuana and alcohol.

After hearing the testimony and argument by the parties, the trial court determined Buchanan had willfully violated a term of his probation. He had admitted going into the Burlington Coat Factory and stealing a watch. When defense counsel indicated Buchanan was willing to waive all of his credits if the trial court "would consider sentencing him to a year and another grant of probation[,]" the court noted Buchanan had had "prior attempts at probation" and had failed to comply with the terms and conditions. The trial court denied Buchanan's request and imposed the sentence which had been imposed, then stayed, on August 17, 2010. The court stated, for his conviction of presenting a forged prescription, Buchanan was to be imprisoned for the high term of three years. For his conviction of second degree burglary, the trial court imposed a concurrent term of three years, the term to be served in state prison. For each of Buchanan's nine prison terms, the court imposed an additional year. In total, Buchanan was sentenced to 12 years in prison. The court awarded Buchanan presentence custody credit for 699 days actually served and 399 days of good time/work time, for a total of 1,038 days.

Buchanan filed a timely notice of appeal on October 18, 2012, in which he appears to be challenging the relief of his counsel of record and the denial of his motion to withdraw his plea. Buchanan, however, failed to obtain from the trial court a certificate of probable cause. (See § 1237.5; Cal. Rules of Court, rule 8.304(b).) [5]

_____

[5] Section 1237.5 provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed

In an order filed November 16, 2012, the Administrative Presiding Justice of this court indicated "[t]he purported appeal in this case, initiated by the notice of appeal filed on October 18, 2012, does not comply with rule 8.304(b) of the California Rules of Court and with . . . section 1237.5.  Unless it is shown that the appeal complies with these provisions, the appeal will be dismissed."

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.  By notice filed March 20, 2013, the clerk of this court advised Buchanan to submit within 30 days any contentions, grounds of appeal or arguments he wished this court  to consider.  No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied appellate counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)  Moreover, examination of the record indicates Buchanan failed to obtain from the trial court a certificate of probable cause (§ 1237.5; Cal. Rules of Court, rule 8.304(b).)  Accordingly, in compliance with the November 16, 2012 order issued by the Administrative Presiding Justice of this court, the appeal must be dismissed.

---

under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.  [¶]  (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

California Rules of Court, rule 8.304(b) states:  "(1) Except as provided in (4), to appeal from a superior court judgment after a plea of guilty or nolo contendere or after an admission of probation violation, the defendant must file in that superior court with the notice of appeal required by (a)—the statement required by . . . section 1237.5 for issuance of a certificate of probable cause.  [¶] . . .  [¶] (4) The defendant need not comply with (1) if the notice of appeal states that the appeal is based on:  [¶]  (A) The denial of a motion to suppress evidence under . . . section 1538.5; or [¶] (B) Grounds that arose after entry of the plea and [so] do not affect the plea's validity."

11

**DISPOSITION**

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.